## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| ARONICA MYLES | CIVIL ACTION NO. 18-799 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| TPUSA – FHCS, INC. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

This case arises out of an employee's claims of racial discrimination and retaliation brought against her former employer pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). Now before the Court is a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 [Record Document 43] by Defendant TPUSA-FHCS, Inc. ("Defendant"). Plaintiff Aronica Myles ("Plaintiff") has filed an opposition [Record Document 45], and Defendant has filed a reply [Record Document 51]. For the reasons discussed below, the Motion for Summary Judgment [Record Document 43] is hereby **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to Plaintiff's racial discrimination claim, and that claim is **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to Plaintiff's retaliation claim.

## BACKGROUND

Defendant operates inbound and outbound call centers on behalf of its clients and assists those clients with "customer care, technical support, and debt collection operations." Record Document 43-4, ¶ 1. Plaintiff was hired on December 26, 2012, to work as a service representative at Defendant's Shreveport call center. *Id.* at ¶ 2. Plaintiff claims that she was promoted to the position of Recruiting Manager on August 2, 2016. Record Document 1, ¶ 7. It is uncontested that Plaintiff's employment was terminated on February 15, 2017, but Plaintiff and Defendant differ on the reasons for her termination. Record Documents 43-4, ¶ 10 & 45-2, ¶ 10.

1

Plaintiff, an African-American woman, claims that she was terminated as a result of purposeful racial discrimination and in retaliation for her complaints regarding such discrimination. Record Document 1, ¶s 13 & 101. Plaintiff alleges that Defendant harbors a culture of racial discrimination, that black employees are treated poorly in comparison to white employees, that white employees are promoted more often and terminated less often than black employees, that she was the only non-white manager, and that all account managers were white males, even though Defendant's Shreveport location is made up of approximately 95% black employees. *Id.* at ¶s 8–13.

Plaintiff also claims that she was terminated in retaliation for opposing racial discrimination. *Id.* at ¶ 9. Plaintiff asserts that she complained about the hiring practices of a fellow employee named Joseph Zetty ("Zetty"). *Id.* at ¶ 33. Plaintiff states that on September 27, 2016, she complained to her direct supervisor, Ryan Collins ("Collins"), that Zetty falsified his interview notes for black applicants, refused to interview a black candidate because that candidate's shirttail was out, and that she believed that Zetty did not hire at least 25 out of approximately 100 candidates he interviewed because the majority of those candidates were black. *Id.* at ¶s 33–38. Plaintiff asserts that on February 14, 2017, she again observed Zetty "falsifying his interview notes and unfairly disqualifying a candidate (a black female)." *Id.* at ¶ 78. Plaintiff states that she reported this incident to Collins, Michael Day ("Day"), a Human Resources Manager, and Jennifer Donaldson ("Donaldson"), another one of Plaintiff's supervisors, but that no disciplinary action was taken. *Id.* at ¶ 79. Instead, Zetty filed a Human Resources complaint against Plaintiff. *Id.* at ¶ 80. Plaintiff was terminated the following day.[1] *Id.* at ¶ 88.

---

[1] It is unclear from the record precisely which of Defendant's employees made the decision to terminate Plaintiff, but it appears to have been some combination of Donaldson, Day, and Collins. During Collins's deposition, Plaintiff's counsel stated that Defendant's discovery responses listed

Plaintiff also states that she told Collins that Donaldson was subjecting her to close scrutiny and discriminatory treatment. *Id.* at ¶ 57. These incidents of "close scrutiny" include reprimanding Plaintiff for taking a lunch break that was thirty seconds too short [*id.* at ¶ 28], erroneously reporting that Plaintiff missed a deadline and trying to "damage Plaintiff's reputation" by doing so [*id.* at ¶s 30 & 32], "lurking" on a web conference call that she had no reason to be a part of [*id.* at ¶ 47], scrutinizing Plaintiff's overtime hours [*id.* at ¶ 52], questioning Plaintiff's decision to terminate an employee [*id.* at ¶s 60–61], mistakenly reprimanding Plaintiff for not copying her on an email and failing to apologize for this mistake [*id.* at ¶s 63–64], failing to send Plaintiff an "Excel tracker tool" that would have made Plaintiff's job easier [*id.* at ¶s 76–77], and issuing Plaintiff a final written warning over thirty days after the complained-of incident occurred, even though it is not Defendant's normal practice to wait so long to make disciplinary decisions. *Id.* at ¶s 70–75.

In contrast to Plaintiff's claims, Defendant contends that Plaintiff was terminated "because she exhibited a history of unprofessional behavior and failed to comply with company policy." Record Document 43-2, p. 1. In its statement of uncontested material facts, Defendant identifies several incidents preceding Plaintiff's termination. Defendant alleges that (1) on May 16, 2015, Plaintiff was demoted from her position of Training Manager Representative because of her "intimidation and unprofessionalism with her team members;" (2) on November 4, 2016, Plaintiff was disciplined for arguing with one of her team members in public; (3) on February 7, 2017,

---

those three individuals, as well as Claudia Bradshaw ("Bradshaw"), Defendant's Vice President of Human Resources, as participants in the meeting wherein it was determined that Plaintiff should be terminated. Record Document 43-23, p. 14. However, Bradshaw stated in her deposition that she did not participate in that decision. Record Document 43-14, p. 8. In his deposition, Collins stated that he did not remember specifically if there was a conference held to discuss Plaintiff's termination but said that because Donaldson was Plaintiff's supervisor at the time, she would have had to request the termination and get it approved by Human Resources. Record Document 43-23, p. 15. In Collins's declaration, he states that Plaintiff's termination was based on a decision made by Defendant's managers, Day, and himself. Record Document 43-10, ¶ 14.

Plaintiff received a written warning for an incident that occurred on January 3, 2017, in which Plaintiff told her team members not to tell Donaldson of any questions or concerns they had about Plaintiff; and (4) on February 14, 2017, Plaintiff received a written warning after Zetty filed a complaint against Plaintiff for unprofessional behavior, stating that she scolded and berated him in public. Record Document 43-4, ¶s 4–9.

In response, Plaintiff acknowledges that she was demoted in May of 2015, but she denies Defendant's stated reason for her demotion and claims that her subsequent promotion to the position of Recruiting Manager nullifies this demotion. Record Document 45-2, ¶s 4–5. Plaintiff admits that she received a written warning on November 4, 2016, but she denies that she engaged in the conduct alleged and denies that the written warning was validly issued. *Id.* at ¶ 6. As to the incident on January 3, 2017, Plaintiff acknowledges that she was issued a final written warning but asserts that her conversation with Donaldson occurred on February 7, 2017, and that this conversation occurred only after Plaintiff complained about Zetty's discriminatory hiring practices. *Id.* at ¶s 7–8. Plaintiff denies that the final written warning was validly issued. *Id.* Finally, Plaintiff states that she was unaware that Zetty filed a complaint against her on February 14, 2017, and she denies engaging in unprofessional behavior toward Zetty. *Id.* at ¶ 9.

Defendant claims that, following Plaintiff's termination, Bradshaw conducted a post-termination interview with Plaintiff on February 14, 2017, and that Bradshaw, Collins, Day, and Donaldson eventually upheld Plaintiff's dismissal, finding "substantial evidence of adequate grounds for termination of [Plaintiff's] employment." Record Document 43-4, ¶s 11–12. Plaintiff responds that she was not notified of her termination until February 15, 2017, that she appealed her termination to Bradshaw, and her termination was upheld in March of 2017. Record Document 45-

2, ¶ 11. According to Plaintiff, Bradshaw "conducted only a cursory investigation" of her allegations and had no personal knowledge of the incidents that took place. *Id.* at ¶ 12.

Plaintiff filed a charge of racial discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued Plaintiff a Right to Sue letter. Record Document 43-22, pp. 2 & 7. Plaintiff then filed the instant lawsuit. Record Document 1. According to Plaintiff, her termination represents Defendant's "purposeful discrimination against [her] based upon her race and/or retaliation for her complaints regarding said purposeful discrimination," in violation of Title VII, 42 U.S.C. §§ 2000e, *et seq. Id.* at 11. Plaintiff requests that the Court declare Defendant's employment practices to be in violation of Title VII, find that Defendant is liable to her, and order Defendant to rehire her, or, in the alternative, award her front pay in an amount determined by a jury. *Id.* at 11–12. Plaintiff also requests back pay and any other benefits or seniority to which she may have been entitled, prejudgment interest, court costs, punitive damages, compensatory damages, and any other relief the Court finds equitable. *Id.*

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the non-movant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the non-movant is so "weak or tenuous" that it could not support a judgment in the non-movant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## LAW & ANALYSIS

Plaintiff brings two claims under Title VII, that of racial discrimination and retaliation. Record Document 1, ¶ 101.[2] The Court will analyze these claims separately.

---

[2] On her EEOC Charge of Discrimination form, Plaintiff checked boxes indicating that she experienced discrimination based on race and sex and that she was retaliated against for complaining about such discrimination. Record Document 43-26, p. 3. However, Plaintiff did not assert sex discrimination in her complaint. *See* Record Document 1, ¶ 101. In her opposition,

# I.     Race Discrimination Claim

Title VII states that it shall be an "unlawful employment practice" for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2012). Where, as in the instant case, a plaintiff offers only circumstantial evidence of discrimination, the three-step *McDonnell Douglas* framework applies. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, a plaintiff must assert a prima facie case of discrimination, which, if established, raises a presumption of discrimination. *Wallace*, 271 F.3d at 219. "The employer must then produce a legitimate nondiscriminatory reason for the adverse employment decision." *Id.* Once the employer produces such a reason, the presumption of discrimination dissipates, and the plaintiff must prove that the employer's given reason for the termination was pretextual and that she was discriminated against because of her protected status. *Id.* at 219–20.

## A.     Plaintiff's Prima Facie Case

A prima facie case of race discrimination requires a showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). In this case, it is undisputed that Plaintiff meets the first three elements of a prima facie case because she

---

Plaintiff admits that she does not have a claim for gender discrimination. Record Document 45-1, p. 8 n.3.

is a member of a protected class, was qualified for her position, and was fired. Plaintiff claims that she meets the fourth element because (1) she was treated less favorably than Timothy Carbine ("Carbine") and Richard Dasilva ("Dasilva"), her similarly situated white co-workers, and (2) she was replaced by Tiffany Le ("Le"), who is white. Record Document 45-1, p. 8.

### 1.   Similarly situated employees

"Employees are similarly situated when they 'held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019) (quoting *Lee v. Ks. City So. Rwy. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009)). Importantly, the conduct the employer uses to justify the termination must be "nearly identical" to that of the comparable employee who allegedly received a dissimilar employment decision. *Id.* Here, Defendant states that it terminated Plaintiff for multiple instances of allegedly unprofessional behavior. Record Document 43-4, ¶s 6–9. Plaintiff attempts to show similarity by complaining that Carbine was not disciplined for yelling at two of Plaintiff's staff members and that Dasilva was not disciplined for yelling at Plaintiff. Record Documents 1, ¶s 48–49 & 46, ¶s 57–60. However, Plaintiff does not allege that Carbine or Dasilva engaged in more than one instance of discipline-worthy behavior whereas Plaintiff allegedly argued with, berated, or reprimanded other employees in public on three separate occasions. *See* Record Document 43-4, ¶s 6–9. Two of these alleged incidents involved Plaintiff disciplining her subordinates in public. *Id.* at ¶s 6 & 8.  On one such occasion, Plaintiff allegedly told her subordinates not to inform Donaldson of any questions or concerns they had with Plaintiff. *Id.* at ¶ 8. The conduct Plaintiff alleges that Carbine and Dasilva engaged in was less severe and occurred less frequently than the conduct Defendant alleges against Plaintiff. Therefore, Plaintiff has not demonstrated that she was treated less favorably than a

similarly situated white co-worker because she was not terminated for conduct that was "nearly identical" to that of Carbine or Dasilva. *Garcia*, 938 F.3d at 244.

2.   <u>Replacement by Tiffany Le</u>

Plaintiff may also establish the fourth element of a prima facie case of discrimination by demonstrating that she was replaced by someone outside of her protected group. In her opposition to summary judgment, Plaintiff asserts that she was replaced by Le. Record Document 45-1, p. 8. In Plaintiff's declaration, she states that "Ms. Le, a white female, replaced me in my position." Record Document 46, ¶ 74. In reply, Defendant provides evidence showing that Le identifies as Native American. Record Document 51-1. Defendant also points the Court to Plaintiff's deposition in which she states that she does not know Le's ethnicity or nationality. Record Document 51, p. 6 n.7 (citing Record Document 43-25, p. 21). The Court acknowledges that this deposition testimony is inconsistent with Plaintiff's declaration that Le is white but finds that this inconsistency does not prevent the Court from considering the declaration.

In determining when an affidavit or declaration can overcome summary judgment, the Fifth Circuit "does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *Moffett v. Miss. Dept. of Mental Health*, 507 F. App'x 427, 434 (5th Cir. 2013) (per curiam) (quoting *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)). However, Plaintiff's declaration that Le is white does not directly impeach her previous testimony that she was unaware of Le's ethnicity or nationality. It is plausible that Plaintiff learned that Le was white after her deposition. The Court declines to impose the harsh measure of striking Plaintiff's declaration on this issue without direct contradiction or impeachment. Based on Plaintiff's declaration stating that Le is white, the Court finds that a genuine issue of material fact exists as to whether Plaintiff was replaced by someone outside of her protected

9

group. As a result, Plaintiff has established a prima facie case of discrimination. The Court will now turn to the next step in the *McDonnell Douglas* framework.

### B.      Legitimate, Nondiscriminatory Reason for Termination

Now that Plaintiff has established a prima facie case of discrimination, the Court must determine whether Defendant has produced a legitimate, nondiscriminatory reason for the adverse employment decision. *Wallace*, 271 F.3d at 219. Defendant asserts that complaints made against Plaintiff by her fellow employees, her violation of company rules, and her unprofessional actions constituted a legitimate, nondiscriminatory reason for her termination. Record Document 43-2, p. 5. Defendant provides evidence in support of this point, including a copy of the final warning issued to Plaintiff on February 7, 2017, regarding "professionalism, leadership, and confidentiality," and a form showing that Plaintiff was terminated on February 15, 2017, for "Violation of Company Policy—Unprofessional Conduct." Record Document 43-20, pp. 2–4. Thus, the Court finds that Defendant has met its burden of production at the summary judgment stage.

### C.      Pretext

At this step of the Title VII discrimination analysis, Plaintiff must prove that Defendant's given reason for her termination was pretextual and that she was discriminated against because of her race. *Wallace*, 271 F.3d at 219–20. Because discrimination is sometimes difficult to prove by direct evidence, "the strength of the circumstantial evidence supporting the plaintiff's prima facie case and showing the defendant's proffered reason is false may be enough to create an inference of discrimination." *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148–49 (2000) and *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 (5th Cir. 1996)). However, Plaintiff must offer specific evidence refuting the factual allegations underlying Defendant's proffered reason for her termination. *Turner*

*v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007). Conclusory statements are not competent evidence to defeat summary judgment at the pretext stage. *Id.* at 345.

Plaintiff argues that she can demonstrate pretext by showing that genuine issues of fact exist as to Defendant's proffered reason for her termination and that "rejection of [Defendant's] proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." Record Document 45-1, pp. 21–22. Plaintiff asserts that the three disciplinary incidents which Defendant cites as the reason for her termination can be proven false because (1) Day and Bradshaw, as well as Collins, who issued her a warning in connection with the incident on October 28, 2016, and Donaldson, who issued her a final written warning in connection with the incident on January 3, 2017, did not observe those incidents personally and therefore did not know whether the allegations against Plaintiff were true or not and (2) Plaintiff denies that she ever yelled or acted unprofessionally in connection with these incidents. *Id.* at 23.

Plaintiff's attempt to demonstrate that Defendant's proffered reason is untrue by contesting the facts underlying her disciplinary incidents falls short. First, Plaintiff's assertions that Defendant's managers did not have personal knowledge of her disciplinary incidents do not amount to evidence showing that they did not occur. Even if Plaintiff did produce such evidence, the Fifth Circuit has stated that "[t]he existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification." *Little v. Republic Refining Co., Ltd.*, 924 F.3d 93, 97 (5th Cir. 1991). Similarly, "[m]anagement does not have to make proper decisions, only non-discriminatory ones." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). Thus, Plaintiff's general denials that she acted unprofessionally and her assertions

that Defendant's managers did not have personal knowledge of her behavior are not enough to demonstrate pretext.[3]

Overall, the Court rejects Plaintiff's argument on the subject of pretext. Plaintiff asserts that "[a]ll that is needed for a plaintiff to avoid summary judgment is to point to some evidence, from which the finder of fact could reasonably conclude that the defendant's proffered reasons were inaccurate." Record Document 45-1, p. 27 (internal quotation marks omitted). The Court finds this statement to be an incorrect summation of the law on this topic. In *St. Mary's Honor Center. v. Hicks*, the Supreme Court rejected the dissent's position that a plaintiff should win his case if he can prove that the defendant's nondiscriminatory reason for termination is false. 509 U.S. 502, 516 (1993). The Court explained that "a reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason" for the termination. *Id.* at 516–17 (emphasis in original) (internal quotes omitted). Stated another way, "[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 519 (emphasis in original). In *Reeves v. Sanderson Plumbing Products, Inc.*, the Court explained that, although a trier of fact may infer that discrimination occurred if an employer's explanation is shown to be false, such a finding is not required. 530 U.S. 133, 147 (2000). The Court stated that there would inevitably be circumstances where "although the plaintiff has established a prima facie case and set forth sufficient evidence to reject defendant's explanation, no rational factfinder could conclude that the action was

---

[3] Plaintiff briefly argues that the fact that her termination was based on subjective reasons "weigh[s] toward rejection of the proffered reason." Record Document 45-1, p. 25. The Court disagrees. Defendant's stated reasons for Plaintiff's termination may be subjective, but the subjectivity of those reasons still does not establish discrimination and is not equivalent to a showing that those reasons were false. Furthermore, none of the cases cited by Plaintiff in support of this argument show that a plaintiff can survive summary judgment at the pretext stage by showing only that her termination was based on subjective factors. *See id.* at 26.

discriminatory." *Id.* at 148. After reviewing the record for evidence that supports Plaintiff's claim of racial discrimination, the Court concludes that this is such a case.

Although Plaintiff has established a prima facie case of discrimination, she has failed to show that Defendant's proffered reason was false. Even if she could show falsity, a reasonable jury adopting Plaintiff's version of the facts would have no basis upon which to conclude that Plaintiff was the victim of discrimination. In fact, the record reveals that only two of the exhibits Plaintiff has submitted directly reference racial discrimination: her declaration and an email she sent following her termination.[4] The email was sent on February 16, 2017, to Defendant's "We Care" account, and in it, Plaintiff states that she is "writing to report retaliation, discrimination and wrongful termination." Record Document 45-16, p. 1. She goes on to say that "[t]here is a practice of discrimination at the Shreveport Office" but does not assert that her own termination was discriminatory. *Id.* at 3. Instead, the email asserts that Plaintiff was wrongfully terminated in retaliation for her complaint about Zetty's discriminatory hiring practices. *Id.* Although relevant to her retaliation claim, this email fails to demonstrate that Defendant's given reason for Plaintiff's termination is a pretext for discrimination. *Wallace*, 271 F.3d at 219–20.

Unlike the email, Plaintiff's declaration does explicitly allege that she was subjected to racial discrimination by Donaldson. Plaintiff states that she was intimidated by Donaldson and

---

[4] Several of Plaintiff's exhibits were submitted via audio recording on a USB drive. Record Documents 45-8; 45-10; 45-12; & 45-15. The Court has reviewed the recordings where the relevant portions were highlighted by Plaintiff but has not reviewed the recordings that Plaintiff has referenced in their entirety. For example, Plaintiff cites to Record Document 45-10, labeled as Exhibit G, in support of her contention that she consistently complained of discrimination. Record Document 45-1, p. 11. This exhibit is a recording that is two hours and twenty-five minutes long. Even though evidence in support of the Plaintiff's argument may technically exist somewhere in this recording, it is incumbent upon the Plaintiff to identify that evidence with particularity. The Court does not have a duty to sift through the record in search of evidence to support a party's position. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003); *de la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005).

believed that Donaldson was treating her differently because of her race. Record Document 46, ¶s 28 & 32. However, Plaintiff's declaration is totally void of facts describing how Donaldson's treatment of Plaintiff differed from Donaldson's treatment of any other employee. Without information about how Donaldson treated other employees, the Court cannot conclude that Plaintiff was treated differently. Plaintiff's conclusory statement that she believed she was being treated differently because of her race, without more, cannot establish a genuine issue of fact on this point. *Turner*, 476 F.3d at 345.

In addition to the evidence in the record, the Court will also examine the allegations contained in Plaintiff's complaint and declaration. The Court finds that these documents describe several incidents and/or interactions that are not unusual in the workplace, especially between a supervisor and an employee. Plaintiff accuses Donaldson of erroneously reporting that the Shreveport office missed a deadline under Plaintiff's supervision, observing Plaintiff's call with a client without announcing herself, questioning Plaintiff's termination of an employee, scrutinizing Plaintiff's overtime hours, telling Plaintiff that she was the only employee Donaldson could not figure out, and failing to send Plaintiff an "Excel tracker tool" that would have made Plaintiff's job easier. Record Documents 1, ¶s 30, 45–47, 52, 60–61, 76–77 & 46, ¶ 28. Plaintiff also complains of a few incidents in which Donaldson's behavior could possibly be construed as rude, including Donaldson's failure to apologize to Plaintiff for mistakenly criticizing her, failing to give Plaintiff praise or feedback on a PowerPoint presentation highlighting Plaintiff's accomplishments as a Recruiting Manager, and asking Plaintiff if Defendant had "the right person in place" while reviewing Plaintiff's overtime hours. Record Documents 1, ¶s 52, 54–55 & 46, ¶ 33. Even so, the fact that some of Plaintiff's interactions with Donaldson were unpleasant, none of these events provides a basis for concluding that Donaldson was discriminating against Plaintiff.

In another instance, Plaintiff complains that Donaldson was "very harsh and aggressive" while reprimanding her for taking a lunch break that was thirty seconds too short. Record Document 46, ¶ 30. Plaintiff states that because Donaldson was not her direct supervisor, Donaldson would have had to deliberately go into her file to see this discrepancy. *Id.* at ¶ 31. However, Plaintiff does not allege that viewing the timeclock of an employee under her supervision was outside the norm for Donaldson as a manager. Moreover, Plaintiff herself states that this conversation with Donaldson was not a disciplinary action and does not allege that it caused her any harm. *Id.* Although being reprimanded for a thirty-second discrepancy may seem harsh, Plaintiff's subsequent messages with Collins show that clocking in early resulted in Plaintiff being paid for her lunch break. Record Document 45-6, p. 1. Collins stated that it was impossible to adjust or fix that type of discrepancy, so "[w]hen that happens we have to coach it."[5] *Id.* This statement indicates that, by addressing the timeclock issue, Donaldson was fulfilling her role as Plaintiff's supervisor rather than unfairly scrutinizing her. *Id.*

Although her interactions with Donaldson frustrated Plaintiff, she has not shown how these interactions constitute discrimination. Especially lacking are facts showing how Donaldson treated other employees under her supervision from which the Court could infer that Plaintiff was treated differently. To the extent that Donaldson was, in Plaintiff's view, unnecessarily harsh in executing her managerial duties, the Supreme Court has stated that Title VII does not set forth "a general civility code for the American workplace." *Burlington v. N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998));

---

[5] "Coaching" appears to be the term used by Defendant to refer to these types of corrective conversations between supervisors and employees. Record Document 46, ¶ 30. According to Plaintiff's declaration, a coaching is not always a disciplinary action. *Id.*

*see also Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 305 (5th Cir. 2020) (per curiam) ("Niceties of employment etiquette are not actionable.").

The Court finds that Plaintiff has failed to meet her burden at the pretext stage. To survive summary judgment, Plaintiff must produce sufficient evidence for a reasonable jury to find either that a discriminatory reason more likely motivated Defendant's decision to terminate Plaintiff or that Defendant's explanation for her termination is unworthy of credence. *Taylor v. Seton Brackenridge Hosp.*, 349 F. App'x 874, 878 (5th Cir. 2009) (per curiam) (citing *Reeves*, 530 U.S. at 143). Here, Plaintiff has produced no evidence of racial discrimination. Plaintiff's circumstantial evidence detailing her interactions with Donaldson and her unsupported assertion that Donaldson treated her differently because of her race do nothing to show that Defendant's proffered reason for Plaintiff's termination is merely a pretext for discrimination. "Indeed, a subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief." *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999) (internal quotation marks omitted). Because a subjective belief of racial discrimination is all that Plaintiff has been able to establish in this case, Defendant's Motion for Summary Judgment [Record Document 43] is hereby **GRANTED** as to Plaintiff's Title VII discrimination claim. This claim is hereby **DISMISSED WITH PREJUDICE**.

## II.   <u>Retaliation Claim</u>

Title VII prohibits an employer from taking action against an employee for, among other things, "oppos[ing] any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). "A retaliation claim that is premised on a pretextual rationale for dismissal is analyzed under the *McDonnell Douglas* framework." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013); *see McDonnell Douglas*, 411 U.S. at 802. A prima facie retaliation

claim requires a plaintiff to establish that (1) she engaged in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal link exists between her protected activity and the adverse employment action. *Royal*, 736 F.3d at 400 (quoting *Turner*, 476 F.3d at 348). If the plaintiff can establish a prima facie case, the burden shifts to the defendant to provide a "legitimate non-retaliatory reason for the employment action." *Id.* The burden then shifts back to the plaintiff to "establish that the employer's stated reason is actually a pretext for unlawful retaliation." *Id.* At the pretext stage, the plaintiff must demonstrate "but-for causation." *Garcia*, 938 F.3d at 243–44.

### A.   Prima Facie Case

Because she was terminated, it is clear that Plaintiff suffered an adverse employment action; this satisfies the second element of a prima facie case of retaliation. The Court will evaluate her claims regarding the first element, protected activity, and third element, causal connection.

#### 1.   Protected Activity

An employee has engaged in protected activity when she has "(1) opposed any practice made an unlawful employment practice by Title VII [opposition clause] or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII [participation clause]." *Riley v. Napolitano*, 537 F. App'x 391, 392 (5th Cir. 2013) (per curiam) (quoting *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998)) (internal quotation marks omitted). Plaintiff does not allege that she participated in any formal Title VII proceedings before her termination. Therefore, any protected activity she engaged in must fall under the opposition clause of Title VII. *See* 42 U.S.C. § 2000e-3(a). The Supreme Court has held that because Title VII leaves the word "oppose" undefined, it should be given its ordinary meaning: "[t]o resist or antagonize . . . ; to contend against; to confront; resist; withstand."

17

*Crawford v. Metro. Gov't of Nashville and Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009) (quoting Webster's New International Dictionary 1710 (2d ed. 1957)).

Plaintiff asserts that she engaged in protected activity by (1) complaining to Collins on September 23, 2016, that she believed Donaldson was discriminating against her because of her race; (2) making another verbal complaint to Collins on December 19, 2016, alleging racial discrimination by Donaldson; (3) making numerous verbal complaints to Day regarding Donaldson's discrimination; (4) making a complaint to Le, the employee who replaced Plaintiff, of racial discrimination by Donaldson; and (5) complaining to Collins, Day, and Donaldson regarding Zetty's discriminatory hiring practices on numerous occasions. Record Document 45-1, pp. 10–11. Furthermore, Plaintiff stated in her email to Defendant dated February 16, 2017, that she was writing "to report retaliation, discrimination, and wrongful termination." Record Document 45-16, p. 1. This email was sent after Plaintiff had been terminated but before Defendant upheld her termination following Bradshaw's investigation. Document 46, ¶s 77–79.

Defendant contends that Plaintiff did not mention racial discrimination in any of her messages or telephone calls with any of Defendant's managers and that Plaintiff "created a story of racial discrimination" after her termination. Record Document 43-2, p. 8. However, Defendant contradicts itself on this point by stating that "the mere fact that [Plaintiff] was terminated during the course of her claims of discrimination does not give rise to a causal link." *Id.* at 9. In any event, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor at the summary judgment stage. *Anderson*, 477 U.S. at 255. Thus, the Court finds that Plaintiff's declaration stating that she made several complaints of discrimination and her February 16 email reporting retaliation, discrimination, and wrongful termination are sufficient to establish that she engaged in activity protected by Title VII.

2.    Causal Link

It is well established that a plaintiff may show a causal link between her protected activity and an adverse employment action by showing close timing between the two. *Feist v. La., Dep't. of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). In this case, Plaintiff alleges that she complained of racial discrimination on multiple occasions over a period of several months. Record Document 45-1, pp. 10–11. Plaintiff states that on February 14, 2017, she observed Zetty violating Defendant's hiring procedures and falsifying notes after interviewing a black female candidate. Record Document 46, ¶s 61–72. According to Plaintiff, she immediately reported this conduct, which she asserts was illegal and racially discriminatory, to Collins and Donaldson. *Id.* at ¶ 72. Plaintiff also claims that she met with Day and made a formal complaint of racial discrimination and retaliation against Donaldson and reiterated her opposition to Zetty's hiring practices on February 14, 2017. *Id.* at ¶ 74. Plaintiff was terminated the next day, allegedly because Zetty lodged a complaint against her. *Id.* at ¶ 75. Clearly, an adverse employment action that occurred the day after Plaintiff engaged in protected activity is sufficient temporal proximity to demonstrate a causal link. *Feist*, 730 F.3d at 454. Accordingly, Plaintiff has established a prima facie case of retaliation.

**B.    Legitimate, Non-Retaliatory Reason for Termination**

Now that Plaintiff has met her burden at the prima facie stage, the burden shifts to Defendant to provide a "legitimate non-retaliatory reason for the employment action." *Royal*, 736 F.3d at 400. Defendant asserts that Plaintiff was terminated because she violated its policies regarding professionalism. Record Document 43-2, p. 5. Defendant's evidence on the point includes a copy of the "Final Written Warning" issued to Plaintiff on February 7, 2017, regarding "professionalism, leadership, and confidentiality," and a form showing that Plaintiff was terminated on February 15,

2017, for "Violation of Company Policy—Unprofessional Conduct." Record Document 43-20, pp. 2–4. Thus, the Court finds that Defendant has produced a legitimate, non-retaliatory reason for Plaintiff's termination.

### C.    Pretext

Now that Defendant has met its burden of producing a non-retaliatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to demonstrate that the given reason is a pretext for retaliation. *Royal*, 736 F.3d at 400. At this stage, a plaintiff must demonstrate but-for causation, which requires "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). "[T]emporal proximity alone is insufficient to prove but for causation," *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007), but "[t]he combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment." *Garcia*, 938 F.3d at 244 (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)). Among this other evidence may be evidence of disparate treatment or evidence "that the employer's proffered explanation is false or unworthy of credence." *Harville v. City of Houston, Miss.*, 945 F.3d 870, 879 (5th Cir. 2019) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)).

As discussed previously, the timing between Plaintiff's alleged protected activity and her termination was certainly suspicious. Thus, Plaintiff may survive summary judgment if she can produce other significant evidence of pretext. In *Shackelford v. Deloitte & Touche, LLP*, the plaintiff, a black female, presented enough evidence of pretext, in addition to temporal proximity, to create a genuine issue of material fact as to whether the defendant fired her in retaliation for activities protected by Title VII. 190 F.3d at 401 & 409. Plaintiff's evidence included (1) temporal

proximity between plaintiff's protected activity and termination; (2) plaintiff's dispute of the events leading up to her termination; (3) plaintiff's allegation that the defendant's employees warned her not to engage in the protected conduct; and (4) plaintiff's claim that she and a white co-worker complained about each other to their supervisors, but only plaintiff received poor reviews for interpersonal skills. *Id.* The court concluded that the evidence created an issue of material fact because a reasonable jury could choose to believe plaintiff's account of the events leading up to her termination, which would cast doubt on the defendant's proffered reason for the plaintiff's termination. *Id.*

The Fifth Circuit followed this reasoning in *Melvin v. Barr Roofing Company*, 806 F. App'x at 301, when it reversed the district court's grant of summary judgment as to the plaintiff's retaliation claim. The plaintiff, a black man, was terminated for failing to take a drug test five days after reporting race-based harassment to his supervisor. *Id.* at 303. In particular, the plaintiff alleged that his co-worker, a self-identified white supremacist, physically threatened him. *Id.* at 304. The plaintiff alleged that after he reported this incident, his supervisor twice told the plaintiff that he did not like "snitches" and that the plaintiff would no longer be working under his supervision. *Id.* The court acknowledged that temporal proximity alone cannot establish but-for causation, but held that "the quick timing here, coupled with [the supervisor's] comments, if believed by a jury, would support a finding" that the supervisor influenced defendant's decision to terminate the plaintiff. *Id.* at 307. Thus, temporal proximity, along with a plaintiff's specific factual allegations disputing the events surrounding his termination, can be sufficient to withstand summary judgment at the pretext stage.

Like the plaintiff in *Shackelford*, Plaintiff disputes the facts leading up to her termination. Plaintiff contradicts every instance of unprofessionalism or bad behavior alleged by Defendant.

According to Plaintiff, the incident on October 28, 2016, arose after her subordinate employee Christiann Martelly ("Martelly") refused to complete an assigned task. Record Document 46, ¶ 43. Plaintiff claims that during this incident, Martelly became loud and insubordinate, whereas Plaintiff remained calm and professional and issued Martelly a warning for her insubordination. *Id.* at ¶s 43–46. Plaintiff states that the incident on January 3, 2017, involved a complaint from Cutrese Davis ("Davis"), another one of her subordinates, about a conversation Plaintiff had with her about invalid attendance points. *Id.* at ¶s 50–52. Plaintiff denies Defendant's assertion that she publicly disciplined Davis or instructed Davis not to address any concerns regarding Plaintiff to Plaintiff's supervisors. *Id.* at ¶s 52 & 54. Finally, Plaintiff asserts that she remained professional during her entire conversation with Zetty on February 14, 2017, wherein she sought to correct his interview practices to comply with Defendant's policies. *Id.* at ¶s 70–71. As such, Plaintiff disputes Defendant's version of the events that led to her termination.

In addition to the close temporal proximity in this case, along with Plaintiff's contradictory version of events, the Court observes that all of the evidence Defendant puts forth in support of its version of events comes from members of its management. Defendant submits the deposition and affidavit of Collins, Plaintiff's direct supervisor for the majority of her employment; the declaration of Day, Defendant's Human Resources Manager for its Shreveport location; and the declaration and deposition of Bradshaw, Defendant's Vice President of Human Resources. *See* Record Documents 43-7; 43-10; 43-14; 43-21; & 43-23. Day, Collins, and Bradshaw all assert that they knew of multiple complaints against Plaintiff from fellow employees about her behavior. Record Documents 43-7, ¶ 8; 43-10, ¶ 11; & 43-21, ¶ 6. However, these complaints do not appear in the record. The record also does not contain statements from individuals who witnessed Plaintiff's behavior. Although Day, Collins, and Bradshaw certainly have personal knowledge of the fact that

they received complaints against Plaintiff, they do not claim to have personal knowledge of the interactions that prompted these complaints. Furthermore, Defendant's documentation regarding Plaintiff's disciplinary record is wholly made up of narrative statements by Collins and Donaldson wherein they report that other employees made complaints about Plaintiff with regard to the incident on October 28, 2016, and the incident on January 3, 2017. Record Document 43-13.[6] Notably, Defendant submits no documentation or narrative statements regarding Plaintiff's interaction with Zetty on February 14, 2017, which it claims led to her termination.

After reviewing the evidence submitted by both parties, the Court finds that there are genuine disputes of material fact that remain outstanding as to whether Plaintiff was fired in retaliation for activity protected by Title VII rather than for unprofessional behavior. When all justifiable inferences are drawn in Plaintiff's favor, as they must be on a motion for summary judgment, the evidence submitted by both parties boils down to Plaintiff's version of events versus Defendant's version of events. *Anderson*, 477 U.S. at 255. Such a contest of credibility is "necessarily resolved in favor" of the non-movant at the summary judgment stage. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). Therefore, Defendant's motion for summary judgment [Record Document 43] is hereby **DENIED** as to Plaintiff's retaliation claim.

### III.   Defendant's Reply Memorandum

Defendant spends most of its reply brief arguing that the Court should strike various pieces of evidence submitted by Plaintiff. Record Document 51, p. 1. Defendant argues that the Court should strike portions of Plaintiff's declaration because they contradict her prior deposition testimony. *Id.* The Court agrees with Defendant that a plaintiff's declaration may not contradict her

---

[6] Defendant has submitted, without explanation, four other documents containing the exact same statements from either Collins, Donaldson, or both. *See* Record Documents 43-16; 43-17; 43-18; & 43-20.

previous deposition testimony without explanation. *See Moffett*, 507 F. App'x at 434. However, aside from the contradiction as to whether Le is white, addressed above, Defendant has failed to identify any specific contradictions between Plaintiff's deposition testimony and her declaration. Therefore, Defendant's argument on this point is of no moment.

Defendant argues that portions of Plaintiff's declaration should be stricken because they "are speculative, without factual basis, not based on personal knowledge, unsubstantiated, conclusory or based on hearsay." Record Document 51, p. 1. Indeed, there are three requirements for an affidavit or declaration that is used to support or oppose a motion for summary judgment: (1) it must be made on personal knowledge; (2) it must set out facts that would be admissible in evidence; and (3) it must show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). Although the Court agrees with Defendant that some portions of Plaintiff's declaration are not based on personal knowledge, are conclusory, or contain hearsay, the paragraphs on which the Court relied to reach its decision meet all of Rule 56(c)(4)'s requirements. Thus, the Court declines Defendant's request to strike portions of Plaintiff's declaration because all of the paragraphs in the declaration either (1) comply with Rule 56(c)(4) or (2) were not relied upon by the Court in reaching its decision. Likewise, the Court also declines Defendant's request to strike Plaintiff's Exhibits A through E, G, I, and K because the Court did not consider these exhibits in reaching its holding as to Plaintiff's retaliation claim. Therefore, Defendant's arguments that these exhibits are inadmissible are moot as to the instant motion.

## <u>CONCLUSION</u>

Based on the foregoing, Defendant's motion for summary judgment [Record Document 43] is hereby **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** as to

Plaintiff's racial discrimination claim, and this claim is hereby **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to Plaintiff's retaliation claim.

      **THUS DONE AND SIGNED** this 23rd day of October, 2020.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE